DECISION
This is an appeal pursuant to G.L. 1956 (1984 Reenactment) § 33-23-1, et seq., from an order entered by the Probate Court of the City of Woonsocket on March 12, 1999. Appellant, Lillian Gervais, is the surviving spouse of the deceased. Appellee, Jeannette Gervais, is the duly appointed and qualified executrix of the will of Maurice A. Gervais. By its order, the Probate Court terminated Appellant's life estate and ordered her paid its value.
 Facts
The parties have stipulated as to the facts. Maurice A. Gervais (Decedent) died on May 16, 1998. His Last Will and Testament was filed for probate in the Probate Court for the City of Woonsocket. Jeannette Gervais (Executrix) is the daughter of the Decedent. Lillian Gervais (Widow) is the widow of the Decedent.
Widow, pursuant to G.L. 1956 § 33-25-4, rejected her legacy under Decedent's will and elected to claim a life estate in his real estate. Decedent's will made a specific bequest of all real estate to his daughter, Executrix. G.L. 1956 §33-25-4 states:
 "Election by surviving spouse — Recording of waiver and claim. — If any estate, real or personal, be devised or bequeathed to a surviving husband or wife in lieu of the life estate provided in § 33-25-2, whether referred to as a life estate, or as a dower or curtesy right, such devise or bequest shall bar said life estate unless such surviving husband or wife shall, within six (6) months after the probate of the will of the deceased spouse, file in the probate court granting such probate a written statement waiving and renouncing such devise and bequest and claiming his or her life estate in the real estate of the decedent. If any such real estate be located in any city or town other than that in which the will of the decedent is probated, such waiver and claim shall also be filed in the records of deeds in each city and town where such real estate is located."
The Decedent's sole real estate consisted of the marital domicile located at 189 Myette Street, Woonsocket (Premises). After electing under the statute to claim the life estate, Widow moved from Premises and leased it to a third party. She entered into a written lease for two years, terminable immediately on her death or by court order.
On March 2, 1999, Executrix filed a motion in the Probate Court to "Enjoin and Restrain Widow from Leasing Premises." Executrix's basis for the motion was that Widow had "abandoned" her life estate by vacating Premises and should be enjoined and restrained from leasing Premises to a third party.
The Probate Court responded to Executrix's motion with an order entered on April 5, 1999. The Order provided that: 1) Widow's interest in the real estate at 189 Myette Street shall be valued and paid over to Widow in lieu of her interest in said property, 2) Executrix shall be permitted access to Premises for appraisal and allowed to remove remaining personal property, and 3) Widow shall be responsible for paying the interim taxes and insurance payments on the property.
 Standard of Review
This Court will review the decision of the Probate Court pursuant to G.L. 1956 § 33-23-1 (d) which provides that when reviewing a contested Probate Court Order or Decision:
 "An appeal under this chapter is not an appeal on error but is to be heard de novo in the superior court. By agreement of the parties, the record of proceedings, including the certified documents and the transcript (if any) from the probate proceedings, may be introduced in the superior court without further authentication. If the record of proceedings is introduced in the foregoing manner, the findings of fact and/or decisions of the probate court may be given as much weight and deference as the superior court deems appropriate, however, the superior court shall not be bound by any such findings or decisions. Nothing herein shall preclude a witness who testified at the probate court proceeding from testifying at the superior court hearing, however, the transcript of such probate court testimony may be used for any evidentiary purpose, consistent with the Rhode Island rules of evidence."
This section mandates that the Superior Court justice make a de novo determination of those portions to which the appeal is directed and the findings of fact and/or decisions of the Probate Court may be given as much weight and deference as the Superior Court deems appropriate. The Superior Court justice, however, shall not be bound by any such findings or decisions.
 Issue of Whether Widow Who Elects a Statutory Life Estate May Rent the Property to a Third Party
According to G.L. 1956 § 33-25-4, a testator is permitted to bar such a life estate by a devise or bequest "in lieu of the life estate', unless the surviving spouse files a timely written statement in the appropriate probate court waiving and renouncing the devise or bequest and claiming a life estate. This statutory life estate was intended to and did replace rights of dower and curtesy as they existed on the effective date of the statute. In the present case, Widow rejected the bequest under the will and elected to receive a life estate on real estate owned by Decedent at his death, within the statutory period of six months.
Executrix claims that Widow, by vacating Premises and renting it, had abandoned it. Widow contends that no authority exists to refute the plain meaning of G.L. 1956 § 33-25-2:
 "Life estate to spouse. — Whenever any person shall die leaving a husband or wife surviving, the real estate owned by such decedent in fee simple at his or her death shall descend and pass to the husband or wife for his or her natural life subject, however, to any encumbrances existing at such death, provided that the liability, if any, of such decedent to discharge such encumbrance or encumbrances shall not be impaired. The provisions of 33-1-1 and 33-1-2 shall be subject to the provisions of this chapter and of 33-1-6."
Widow argues that neither this statute nor § 33-25-5
conditions a widow's life estate on continuous occupancy. When construing a statute, the courts are bound by legislative intent.Gilbane v. Poulas, 576 A.2d 1195, 1196 (R.I. 1990).
Prior to the adaptation of our present statutory scheme, Rhode Island had adopted the common law rule giving a life tenant the right to rent or devise the life estate. Chamberland v.Goldberg, 152 A.2d 219, (R.I. 1959). Our Supreme Court has not yet considered the question of whether, under elective share statutes, a widow's renting of the property to a third-party has the effect of defeating a surviving spouse's statutory right to a life estate in his or her deceased spouse's real estate. When an issue of first impression is presented, courts often look to other jurisdictions for guidance.
 Elective Share Statutes
Almost all states have abolished the dower and curtesy interests. Beginning with New York in 1930, common law states gradually turned from a system of dower and curtesy to a system of protection based on the decedent's entire estate. Matter ofEstate of Riefberg, 446 N.E.2d 424, 427 (N.Y. 1983). Nonetheless, even today a few states recognize dower by statute, although a survivor's rights under such statutes are frequently quite different from those found at common law.[1] Rhode Island abolished dower and curtesy in 1978 and replaced these rights with a unisex statutory substitute.[2]
Today, most of the common law jurisdictions in the United States afford some form of elective share to the surviving spouse.[3] These provisions are now equally available to widows and widowers.[4] The elective share is also often called a forced share because the surviving spouse can force the estate to provide her with the prescribed statutory minimum despite the testator's contrary wishes clearly expressed in his otherwise binding will.
The purpose of elective share statutes was to remedy the inadequate protection afforded by dower.[5] Elective share statutes restrict a decedent spouse's freedom to disinherit his or her surviving spouse by entitling a spouse to at least a portion of the decedent spouse's estate. Two policy considerations underlying these laws are: 1) The partnership theory suggests that the marriage relationship is an equal economic partnership,[6] and 2) The support theory states that a spouse owes a duty to support the family while living, and a spouse should not evade this duty upon death.[7]
In Rhode Island, no statutory provision conditions a widow's elective life estate on constant occupancy. Accordingly, traditional common law treatment of a life estate should control. The common law allows the holder of a life estate to rent the property and receive the income. This is consistent with the policy considerations of the elective share.
 Issue of Whether the Probate Court May Involuntarily Terminate Widow's Life Estate and Order Her Paid its Value
G.L. 1956 § 33-25-5, which allows a court to order payment of value of a life estate in an elective share, states:
 "In any case where real estate shall be ordered sold by any court, except where otherwise specifically provided, or real estate is taken under authority of law, and it shall appear that a surviving husband or wife is or may be entitled under this chapter to a life estate in the property, the court having jurisdiction of the proceedings may, in its discretion, upon the petition of the surviving husband or wife as the case may be, and after notice, determine the present value of the life estate and order it to be paid to him or her in lieu of the life estate out of the proceeds of the sale or taking."
This statute only applies to a situation where real estate is either sold by the court or taken under authority of law. Section33-25-5 is triggered only by a judicial order of sale, not by the denial of such an order. Carr v. Carr, 1993 WL 853807, *3 (R.I. Super.) The threshold question is to determine whether or not the probate order in the present case is a judicial order of sale or a taking under authority of law. If there is a sale or taking, and the surviving spouse is or may be entitled to a life estate in the property, the next question to be resolved is whether a petition with notice was made by a surviving spouse to request payment in lieu of the life estate. Only then may the court exercise its discretion to determine value and order it paid to the surviving spouse in lieu of a life estate out of the proceeds of the sale or taking.
Widow argues that her estate has not been sold or taken. She did not request payment as a substitute for her life estate. Executrix does not address these issues in her memorandum to the Court, but rather claims that there is no statutory basis authorizing a surviving spouse who elected a life estate to lease or convey those estates. Her argument further states that since the legislature did provide payment in lieu of a life estate in certain circumstances with § 33-25-5, the legislature failed to expand upon those rights to include the ability to lease the property.
The threshold question of whether there is a sale or taking is answered in the Probate Court's Order. The actual language of the Order states, "Widow's interest in the real estate at 189 Myette Street shall be valued and paid over to Widow in lieu of her interest in said real property." The Order directs that Widow's interest be valued and paid to her, but it does not direct an actual order of sale. There is no taking of Premises under authority of law. Since § 33-25-5 is not triggered, the Probate Court has no procedural or substantive jurisdiction to issue any order purporting to adjudicate those interests.
In Connole v. Connole, 113 A. 467 (R.I. 1921), the Superior Court reached a determination that it was for the best interests of all the parties before it that dower should be assigned in a manner not warranted by statute. Our Supreme Court, however, did not validate the Court's decree and that case was overturned.Connole v. Connole, 119 A. 321, 323 (R.I. 1923). Our Supreme Court held:
 "From our examination we are satisfied there is no adequate support for the proposition that ordinarily dower may be assigned to a widow by awarding to her a gross sum in the proceeds of the sale of real estate without express statutory authority or the consent of all the parties. Such method of assignment of dower is not recognized in our statute. While courts of equity have jurisdiction in cases of dower (Sprague v. Stevens, 32 R.I. 361, 79 A. 972), they are without power to assign dower in any other manner than that provided by law."
In entering the decree which terminated Widow's life estate and ordered her paid its value, the Probate Court assumed to act in excess of its jurisdiction. The Probate Court violated the express language of G.L. 1956 § 33-25-5, which required a judicial sale or taking under authority of law in order for a court to terminate Widow's life estate. There is no room for statutory construction or extension, and words of statute must be given their plain and obvious meaning, when language of statute is unambiguous and expresses clear and sensible meaning; such meaning is presumed to be intended by legislature, and statute must be applied literally. In re Advisory Opinion to theGovernor, 504 A.2d 456 (R.I. 1986).[8]
 Conclusion
After review of the entire record, the Court finds the Order of the Probate Court that terminated Widow's life estate and ordered her paid its value to be in contradiction to the R.I. statutes. The Court further finds that substantial rights of the appellant, Lillian Gervais, have wrongfully been prejudiced, and that the actions of the Probate Court exceeded statutory authority. Accordingly, the Court grants Appellant's request and reverses the Probate Court's order.
Prevailing counsel shall submit an order and judgment consistent herewith.
[1] See Volkmer, Spousal Property Rights at Death: Reevaluation of the Common Law Premises in Light of the Proposed Uniform Marital Property Act, 17 CREIGHTON L.REV. 95, 100 (1983); J. Dukeminier J. Krier, supra note 10, at 541.
[2] 33-25-1 Dower and curtesy abolished. The right of a widow to common law and/or statutory dower in the estate of her husband and the right of a husband to common law and/or statutory curtesy in the estate of his wife are hereby abolished.
[3] See 25 Am. Jur. 2d § 4-37 under Domicile-Elections 1-206.
[4] 45 Case W. Res. L. Rev. 83, *101.
[5] At common law, a surviving spouse had the right of dower (if a female) or curtesy (if male). Dower and curtesy ensured that a surviving spouse retained some assets in the event that the decedent spouse's will inadequately provided for the surviving spouse. This gave the surviving spouse a life estate in a specified amount of the lands of the decedent. For example, a surviving wife received a life estate in one-third of the husband's lands. These rights attached not only to land owned by the decedent at death, but also to land that was conveyed by the decedent during the marriage. While dower and curtesy provided some protection for surviving spouses, they also had negative effects. For example, dower constituted a cloud on title to realty and, therefore, a restraint upon alienation, since it attached to all realty owned by the husband at any time during the marriage. In addition, dower and curtesy did not adequately ensure that the surviving spouse would share in all property accumulated by the spouses during marriage.
[6] See UNIF. PROBATE CODE art. II, Pt. 2 general cmt. (amm ended 1993), 8 U.L.A. 108 (Supp. 1996) (stating that "the economic rights of each spouse are seen as deriving from an unspoken marital bargain under which the partners agree that each is to enjoy a half interest in the fruits of marriage").
[7] See UNIF. PROBATE CODE art. II, Pt. 2 general cmt. (amended 1993), 8 U.L.A. 112-13 (Supp. 1996) (stating that the revisions to the UPC's elective share statute "implement the support theory by granting the survivor a supplemental elective share amount related to the survivor's actual needs").
[8] While not presently before the Court, the Court questions whether the Probate Court has the authority to order the sale of real estate solely to trigger the provisions of 33-25-5.